UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RASHEED HILSON, SR.,<br><br>    Plaintiff,<br><br>    v.<br><br>JESSE ARNETT, et al.,<br><br>    Defendants. | CASE NO. 1:15-cv-01240-MJS (PC)<br><br>**ORDER REQUIRING PLAINTIFF TO FILE A FIRST AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ON THE COGNIZABLE CLAIMS IN HIS ORIGINAL COMPLAINT**<br><br>**(ECF No. 1)**<br><br>**FIRST AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS** |

      Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. His complaint is before the Court for screening. (ECF No. 1.) Plaintiff has consented to the undersigned's jurisdiction. (ECF No. 7.)

## I. SCREENING REQUIREMENT

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III. **PLAINTIFF'S ALLEGATIONS**

Plaintiff was detained at California State Prison ("CSP") in Corcoran, California, when the acts giving rise to his complaint occurred. Plaintiff names as Defendants: Correctional Sergeants ("CS") Jesse Arnett and Helen Gamboa; Correctional Officers ("CO") Hector Flores, Joseph Potzernitz, and Jesse Gonzales; and Correctional Lieutenants ("CL") Marsh and Wentherford. Plaintiff brings suit against these Defendants in both their individual and official capacities.

By way of relief, Plaintiff seeks $10,000,000 in compensatory damages, $1 in nominal damages, and $10,000,000 in punitive damages. He also seeks a declaration from the California Department of Corrections ("CDCR") that these Defendants did violate Plaintiff's rights.

Plaintiff's allegations may be summarized essentially as follows:

#### A. **Plaintiff's Transfer to CSP**

On June 25, 2013, Plaintiff was transferred from Salinas Valley State Prison ("SVSP") to CSP. During the transfer, Plaintiff's medically-authorized wheelchair was not transferred with him, in violation of the Americans with Disability Act.

#### B. **The August 2, 2013 Attack**

On August 2, 2013, while attempting to use the lavatory in his cell, Plaintiff fell with such force (due to his weight, 266 pounds) that he cracked his skull on the edge of a locker.

Despite repeated "man-down" requests, Defendant CS Helen Gamboa delayed calling for help for 30 minutes, saying "You don't wanta [sic] go man down I promise you," and "I guess I'ma [sic] have to show you." The blood on Plaintiff's hands and head and on the floor showed how seriously he was injured, but Defendant Gamboa ignored it and did not even enter his cell.

Eventually, custody staff came and found Plaintiff lying on the ground in pain. Rather than helping Plaintiff, Defendant Potzernitz asked the tower for riot gear. Five

minutes later, Jesse Arnett (or someone who resembles him) and Potzernitz, who by then was also in riot gear, jumped on top of Plaintiff and began to punch, kick and twist Plaintiff's left leg at the ankle trying to break it. Potzernitz finally stopped when an unknown sergeant told him to stop.

This unidentified sergeant directed staff to lift Plaintiff onto a stretcher. Before doing so, they placed Plaintiff in mechanical restraints behind his back. His weight applied pressure and cut off circulation, causing pain. The driver of the emergency vehicle drove fast and hit bumps on the road, causing Plaintiff extreme pain. Plaintiff yelled at him to drive slower and more carefully, but he did not. The restraints were finally taken off at the request of the doctor at the hospital. After examination, Plaintiff was given a clean bill of health and discharged.

Upon his return to CSP, Lt. Wenthenford, and a mental health clinician and a psychologist each denied Plaintiff's request to be placed in administrative segregation ("ASU") because he feared further assaults from staff.

Plaintiff remained in pain and requested a wheelchair to get around. His request was denied, in violation of CDCR policy. Without a wheelchair, Plaintiff was unable to access food. Plaintiff was denied "any and all food" for six days.[1]

### C. The August 10, 2013 Attack

On August 10, 2013, Plaintiff was interviewed by Defendant CS Gonzales regarding Plaintiff's request for a cane and a wheelchair. During the interview, CS Gonzales said, "However, you already know how I feel about you. I think you're a piece of shit. And, I'm denying your request." CS Gonzales also rescinded a lower bunk chrono previously granted to Plaintiff.

Later that day, Plaintiff was handcuffed and moved to another cell by Arnett, Gamboa, and Flores. Once in the new cell, Plaintiff brought his hand to the food port to be uncuffed. After one cuff was removed, Plaintiff turned slightly so that the other cuff

---

[1] Plaintiff admits, however, that he attended Muslim religious services to eat. See Compl. ¶ 19, ECF No. 1 at 14.

4

could be removed. Arnett and Gamboa then pepper sprayed Plaintiff, and unknown correctional officers entered the cell and recuffed Plaintiff. Flores and Potzernitz escorted Plaintiff out of the cell where they punched, kicked, choked, and stabbed him until he defecated on himself. Gamboa then sprayed Plaintiff again with pepper spray. CL Marsh watched the assault and laughed. Plaintiff was later found guilty of battery on a peace officer, and the matter was referred to the District Attorney for criminal charges. That case is pending.

As a result of the multiple assaults, Plaintiff became suicidal and was taken to High Desert State Prison for a crisis bed. There, he was placed in a rubber room for two days. He was then returned to CSP and ultimately transferred to California Substance Abuse and Treatment Facility ("CSATF") on November 7, 2013.

## IV. ANALYSIS

### A. Eleventh Amendment Immunity

Plaintiff's official capacity claims for damages against the Defendants are barred by the Eleventh Amendment and therefore dismissed with prejudice. See Kentucky v. Graham, 473 U.S. 159, 169-70 (1985) (Eleventh Amendment immunity from damages in federal court action against state remains in effect when state officials are sued for damages in their official capacity). Although the Eleventh Amendment immunity precludes an award of damages against Defendants in their official capacities, it "does not bar actions for declaratory or injunctive relief brought against state officials in their official capacity." Austin v. State Indus. Ins. Sys., 939 F.2d 676, 680 (9th Cir. 1991). Plaintiff's request for declaratory relief against the Defendants remains intact, as does Plaintiff's request for damages against the Defendants in their individual capacities. See Hafer v. Melo, 502 U.S. 25, 31 (1991) (Eleventh Amendment does not bar suits seeking to impose individual liability upon a government official for actions taken under color of state law). Therefore, Plaintiff's damages request against Defendants in their official capacities will be dismissed.

B.     **Eighth Amendment Claims**

    1.     **Deliberate Indifference**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994).

"To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To establish the objective prong, a plaintiff must show a serious medical need by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted). When a prisoner alleges that a delay of medical treatment amounts deliberate indifference, the prisoner must show that the delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Plaintiff accuses Defendant Gamboa of delaying a response to Plaintiff's "man down" requests for 30 minutes. It is clear, though, that the delay did not worsen Plaintiff's

1  condition – he was given a clean bill of health by an independent examining doctor. See
2  Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (where a plaintiff alleges delay that
3  constitutes deliberate indifference, he must allege that the delay caused "significant
4  harm and that Defendants should have known this to be the case."). Plaintiff has not
5  done that here, and thus his claim against Gamboa based on her failure to respond
6  immediately must be dismissed.

7  Construing the complaint liberally, it appears that Plaintiff is also alleging
8  deliberate indifference due to the Defendants' failure to provide him with a wheelchair.
9  Plaintiff, however, asserts no facts indicating he had a medical need for a wheelchair,
10 that any Defendant was aware of that need, or that any Defendant's failure to provide
11 the same was sufficiently egregious to amount to deliberate indifference. Plaintiff does
12 claim that CS Gonzales denied Plaintiff's accommodation request for a cane and
13 wheelchair, but he does not allege that this Defendant was aware of a medical need for
14 these items. Additionally, while Plaintiff alleges that the denial of a wheelchair resulted in
15 his reliance on unnamed staff members to bring him food, and they did not do so,
16 Plaintiff admits that he was able to attend Muslim religious services and eat there. Thus,
17 he has not alleged injury. There is therefore no constitutional violation on these facts.

### 2. Excessive Force

19 "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment
20 places restraints on prison officials, who may not ... use excessive physical force against
21 prisoners." Farmer, 511 U.S. at 832 (citing Hudson v. McMillian, 503 U.S. 1 (1992)).
22 "[W]henever prison officials stand accused of using excessive physical force in violation
23 of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a
24 good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause
25 harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

26 When determining whether the force was excessive, the court looks to the "extent
27 of the injury suffered by an inmate . . . , the need for application of force, the relationship

between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327).

The extent of injury suffered by the plaintiff may indicate the amount of force applied. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Id. (quoting Hudson, 503 U.S. at 9).

> The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."

Wilkins, 559 U.S. at 37-38 (internal citations and some internal quotation marks omitted).

Plaintiff here accuses Defendants Arnett and Potzernitz of attacking him in response to an emergency "man down" request while Plaintiff lay on the floor of his cell bloodied and in pain. Plaintiff also accuses Defendants Arnett, Gamboa, Flores, and Potzernitz of spraying him with pepper spray and brutally attacking him without provocation. These allegations are sufficient to state a claim.[2]

However, Plaintiff's allegation that the mechanical restraints placed on him were too tight does not state a claim. "In general, in cases where tight handcuffing was found

---

[2] While the Court recognizes that people do at times maliciously and sadistically impose pain on another without justification, experience has shown that more often than not a prisoner Plaintiff has engaged in some activity which precipitated a responsive use of force, and the question becomes whether the force used was greater than necessary. If such is the case here, Plaintiff may be better served by setting out the circumstances in more detail and allowing the Court to focus in on the true issue.

to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant." Reviere v. Phillips, 2014 WL 711002, at *6 (E.D. Cal. Feb. 21, 2014) (collecting cases). In order to properly assert a claim for excessive force for tight handcuffs, Plaintiff must identify those individuals who were aware that the handcuffs were so tight that they were causing Plaintiff pain and then did nothing to alleviate that pain. See Shaw v. City of Rendondo Beach, 2005 WL 6117549, at *7 (C.D. Cal. 2005) ("In those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or other forms of abusive conduct in conjunction with the tight handcuffing.")

### 3. Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 832-33 (1994) (quotations omitted). To establish a violation of this duty, the prisoner must show first, that he was incarcerated under conditions posing a substantial risk of serious harm; and second, that a prison official knew of and was deliberately indifferent to this risk. Id. at 834. Plaintiff here accuses CL Marsh of watching the August 10, 2013 assault on Plaintiff, having the power to stop it, and not doing anything to intervene. Plaintiff has thus asserted a viable claim against this Defendant.

## C. Fourteenth Amendment Claims

### 1. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are

protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008). Strict scrutiny applies to equal protection claims alleging race-based or religious discrimination (i.e., where the plaintiff is member of a "protected class"); minimal scrutiny applies to all other equal protection claims. See Lee, 250 F.3d at 686-67.

To violate the Equal Protection Clause of the Fourteenth Amendment, the defendants have to act with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and such conduct does not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

The nature of Plaintiff's equal protection claim is unclear. Plaintiff does not identify to which class he belongs, and it is unclear how any of the Defendants' conduct encroached upon Plaintiff's equal protection rights. Therefore, this claim will be dismissed.

### 2. Due Process: Falsified Charges

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Although prisoners retain due process rights, those rights are limited "by the nature of the regime to which they have been lawfully committed." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citations omitted). To the extent Plaintiff asserts a due process claim against any Defendant for falsifying disciplinary charges, he fails to state a claim. Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully issued disciplinary reports), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (prisoner's claims based on allegedly false charges do not state a constitutional claim); Brown v. CMC, (C.D. Cal. May 18, 2010) ("allegations of a fabricated RVR, alone, do not support a cognizable due process claim").

### D. Conspiracy

Conspiracy under § 1983 merely provides a mechanism by which to plead or prove a constitutional or statutory violation. Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). Although conspiracy claims are actionable under Section 1983, "it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Id. at 742. A pro se complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights will not withstand a motion to dismiss. Zemsky v. City of New York, 821 F.2d 148, 152 (2nd Cir. 1987).

Plaintiff has not pled sufficient facts to support a cognizable claim for a conspiracy to violate Plaintiff's constitutional rights. Plaintiff's bare allegation that Defendants conspired "with a total disregard to Plaintiff's numerous request [sic] for accommodations and/or stronger pain medication" is devoid of any suggestion of facts which might conceivably support it. This claim will therefore be dismissed.

**D.     Violation of CDCR Policies**

Insofar as Plaintiff brings suit against any of the Defendants for violations of CDCR policy, he is advised that a violation of a prison regulation or policy is not a per se constitutional violation. See Davis v. Kissinger, 2009 WL 256574, *12 n.4 (E.D. Cal. 2009). Thus, complaints where prison officials violated prison policy will not support a Section 1983 claim.

**F.     The Americans with Disabilities Act**

Title II of the Americans with Disabilities Act ("ADA") "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052. Title II of the ADA applies to inmates in state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); see, Duffy v. Riveland, 98 F.3d 447, 453–56 (9th Cir. 1996).

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. In the ADA context, a plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

The "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as . . . medical care . . . constitutes

exclusion from participation in or ... denial of the benefits of the prison's services, programs, or activities." United States v. Georgia, 546 U.S. 151, 157 (2006).

Plaintiff's ADA claim fails. He has not identified his disability. He has also not asserted facts indicating he was excluded from or discriminated against with regard to services, program, or activities at CSP because of his disability. Though Plaintiff asserts that he was improperly denied a wheelchair upon his transfer to CSP, in violation of the ADA, he fails to link this claim to any Defendant. Therefore, this claim will be dismissed.

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that Plaintiff states these claims against the following Defendants: (1) an Eighth Amendment excessive force claim against Defendants Arnett, Gamboa, Potzernitz, and Flores; and (2) an Eighth Amendment failure to protect claim against Defendant CL Marsh. All other claims and Defendants are subject to dismissal for the reasons stated supra.

The Court will grant Plaintiff an opportunity to file an amended complaint consistent with the foregoing. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff does not wish to file a first amended complaint, and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims. The other Defendants then will be dismissed, and the Court will provide Plaintiff with the requisite forms to complete and return so that service of process may be initiated.

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George, 507 F.3d at 607. Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Within thirty (30) days from the service of this order, Plaintiff must either:
    a. File a first amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file a first amended complaint and that he is willing to proceed only on the claims found to be cognizable in this order;
2. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his complaint, filed August 6, 2015;
3. If Plaintiff fails to file a first amended complaint or notify the Court in writing that he wishes to proceed only on his cognizable claim, in compliance with this

14

order, the Court will dismiss this action, with prejudice, for failure to comply with a court order and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). <u>Coleman v. Tollefson</u>, 135 S. Ct. 1759, 1761 (2015).

IT IS SO ORDERED.

Dated:   October 13, 2015             /s/ *Michael J. Seng*
                                                  UNITED STATES MAGISTRATE JUDGE