1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RASHEED HILSON, SR.,

               Plaintiff,

    v.

JESSE ARNETT, et al.,

               Defendants.

CASE NO. 1:15-cv-01240-MJS (PC)

**ORDER REQUIRING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ON THE COGNIZABLE CLAIMS IN HIS FIRST AMENDED COMPLAINT**

**(ECF No. 11)**

**AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS**

      Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. He has consented to the undersigned's jurisdiction. (ECF No. 7.) No other parties have appeared in the action.

      On October 14, 2015, the Court screened Plaintiff's complaint and found that it stated Eighth Amendment claims against Defendants Arnett, Gamboa, Potzernitz, Flores, and Marsh, but no other claims. (ECF No. 8.) Plaintiff was ordered to file an amended complaint or notify the Court of his willingness to proceed only on the

cognizable claims. Plaintiff filed a first amended complaint on December 10, 2015. (ECF No. 11.) His first amended complaint is before the Court for screening.

## I. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III.    Plaintiff's Allegations

Plaintiff is detained at California Correctional Institution but complains of acts that occurred at California State Prison ("CSP") in Corcoran, California. He names the following defendants in their individual and official capacities: Correctional Sergeants ("CS") Jesse Arnett, Helen Gamboa, Joseph Potzernitz and Jesse Gonzales; Correctional Officer ("CO") Hector Flores; Correctional Lieutenants ("CL") Marsh and Wentherford; and Does 1-20.

Plaintiff's allegations are not presented chronologically and are somewhat difficult to follow. In brief summary, Plaintiff claims that he was improperly denied the use of a wheelchair as an accommodation for his multiple medical issues. As a result, he had difficulty moving about the prison and was unable to participate fully in prison programming. Also as a result, Defendants subjected him to several assaults. One of these assaults resulted in Plaintiff being criminally prosecuted. His more detailed allegations may be summarized essentially as follows[1]:

### A.    Plaintiff's History

Plaintiff has neuropathy, stenosis, and back pain resulting from a slip and fall down stairs at Riverside County Jail. He has a chipped vertebra from gunshot wounds and has a bullet lodged behind his right eye. He has an ear injury that causes vertigo. He has long standing knee pain.

---

[1] Plaintiff presents over three hundred pages of documents in support of his complaint. Plaintiff does not explain the import of the documents, other than to periodically cite to them. The court is not required to, and will not, sift through Plaintiff's exhibits to decipher the claims he is attempting to make. Plaintiff must explain his claims in the body of the complaint.

Plaintiff has been partially disabled or "DPO"[2] since 2011. While incarcerated at North Kern State Prison from 2008 to 2011, Plaintiff purchased a cane. He also purchased a wheelchair while detained at Riverside County Jail.

Plaintiff's DPO status was revoked following an altercation with other inmates on February 27, 2013 at Salinas Valley State Prison. The circumstances regarding the revocation of Plaintiff's DPO status do not involve the Defendants in this action and will not be addressed further.

### B.   Plaintiff's Transfer to CSP

On June 25, 2013, Plaintiff was transferred from Salinas Valley State Prison to CSP. Plaintiff's wheelchair was not transferred with him, in violation of the Americans with Disability Act. Non-party CO Johnson and other unnamed second watch staff denied Plaintiff the use of a wheelchair because Plaintiff did not have a chrono. However, Plaintiff could not obtain a chrono because he did not have a wheelchair to go to see a specialist.

At some point, Defendant Wenthenford issued a modification order allowing Plaintiff temporary usage of a wheelchair upon Plaintiff's request. However, he did not ensure that this request would be upheld by his subordinates.

### C.   The July 2, 2013[3] Attack

On July 2, 2013, Plaintiff returned to his cell and noticed that his wheelchair was no longer there. Plaintiff asked to speak with a sergeant. Non-party CO Johnson lifted Plaintiff and his wheelchair from behind and shoved Plaintiff into the cell. Plaintiff collided with the top locker. Non-party CO Ysguima intervened and closed Plaintiff's cell door. Defendant Gonzales ordered Johnson escorted off the yard.

---

[2] A "DPO" is an intermittent wheelchair user.
[3] Plaintiff lists the date of this attack as July 2, 2015. However, this appears to be a typographical error as Plaintiff was no longer incarcerated at CSP in 2015.

### D.    The July 31, 2013 Incident\

On July 31, 2013, Plaintiff attended the medical clinic and begged the L.V.N. Nurse to be seen by a doctor due to his extreme pain. Plaintiff was told to put in a request to be seen. Plaintiff explained that he had submitted fifteen to twenty medical requests but still had not been seen. Defendant Gonzales and others came to the clinic, cuffed Plaintiff behind the back, and removed him from the clinic in restraints. Plaintiff and Gonzales began to argue. Gonzales had Plaintiff's cuffs removed and stood in front of Plaintiff in a fighting stance. Plaintiff sat down and asked to be given his wheelchair and cane. Gonzales told Plaintiff that he would never be given a wheelchair. He told Plaintiff, "If you can't walk, crawl. If you can't crawl, scoot." Gonzales got on his radio and soon thereafter, Johnson appeared. Gonzales and Johnson whispered to each other. Johnson snatched Plaintiff's head forward between Plaintiff's knees and he and an unknown officer lifted Plaintiff to his feet by his arms and wrist. Plaintiff suffered pain and was unable to move easily for a few days.

### E.    The August 2, 2013 Attack

On August 2, 2013, while attempting to use the lavatory in his cell, Plaintiff fell with such force (due to his weight, 266 pounds) that he cracked his skull  on the edge of a locker.

Despite repeated "man-down" requests, Defendant CS Helen Gamboa delayed calling for help for 30 minutes, saying "You don't wanta [sic] go man down I promise you," and "I guess I'ma [sic] have to show you." Plaintiff had blood on his hands and head and on the floor, but Gamboa claimed she could not see it.

Eventually, custody staff came and found Plaintiff lying on the ground in pain. Rather than helping Plaintiff, Defendant Potzernitz asked the tower for riot gear. Five minutes later, Jesse Arnett (or someone who resembles him) and Potzernitz, who by then was also in riot gear, jumped on top of Plaintiff and began to punch, kick and twist

Plaintiff's left leg at the ankle trying to break it. Potzernitz finally stopped when an unknown sergeant told him to stop.

This unidentified sergeant directed staff to lift Plaintiff onto a stretcher. Before doing so, Plaintiff was placed in mechanical restraints behind his back. The cuffs were too tight and cut off Plaintiff's circulation. Plaintiff expressed that he was in extreme pain but nothing was done. After Plaintiff was placed on the stretcher, his weight applied pressure and cut off circulation to his cuffed hands, causing pain. The driver of the emergency vehicle drove fast and hit bumps on the road with the purpose of causing Plaintiff extreme pain. Plaintiff yelled at him and the attending female correctional officer to slow down, but he did not. The restraints were finally taken off at the request of the doctor at the hospital. Plaintiff received a CT scan. Dr. Edgar Clark made a "favorable diagnosis."

Plaintiff expressed his fear of second watch staff to Dr. Clark. He explained that he would be subjected to more violent assaults if he was not provided a wheelchair. He told Clark that his facility physician would not consider his accommodation request. Nevertheless, Clark returned Plaintiff to his facility and referred him to his facility medical clinic regarding his accommodation request.

Plaintiff informed non-party CO Medsen that he feared further assaults from second watch staff. Upon his return to CSP, Plaintiff also informed Defendant Wenthenford and mental health staff (non-parties Stokes and Spokes) regarding his fears. Plaintiff informed Wenthenford that he had a bullet behind his right eye and that he could be seriously injured if he sustained an injury to his eye. His fears were not taken seriously. All of these individuals denied Plaintiff's request to be placed in administrative segregation ("ASU").

Plaintiff remained in pain and requested a wheelchair to get around. His request was denied, in violation of CDCR policy. Without a wheelchair, Plaintiff was unable to attend religious services. Plaintiff also remained without food for six days despite being

told by CO Doe that he would be fed.[4] CO Doe also denied Plaintiff the use of a wheelchair.

###### F.    The August 10, 2013 Attack

On August 10, 2013, Plaintiff was interviewed by Defendant CS Gonzales regarding Plaintiff's request for a cane and a wheelchair. Gonzales is not a doctor. During the interview, CS Gonzales said, "You already know how I feel about you. I think you're a piece of shit." Plaintiff advised Gonzales of the bullet behind his eye and his fears of further injury if the bullet was dislodged during an assault. Plaintiff's request for a wheelchair was denied. Gonzales also vacated a modification order that had been issued by Defendant Wenthenford, which had kept Plaintiff close to program facilities and services and afforded him a lower bunk on a lower tier. Plaintiff contends that Gonzales should have granted Plaintiff's request for a wheelchair on a temporary basis until Plaintiff could be seen by medical staff.

After speaking with Gonzales, Plaintiff stood outside the door to Defendant Marsh's office and asked to speak with Marsh. Defendants Potzernitz and Flores, as well as other officers, told Plaintiff to leave because Marsh did not want to talk to him. Plaintiff was escorted out of the office.

Later that day, Plaintiff was informed by Arnett, Gamboa, and Flores that he was being moved to a new cell. Plaintiff questioned the move. He did not believe he was compatible with his new cell mate due to his cell mate requiring a lower bunk and "some other issues that derived from the streets." Nevertheless, Plaintiff was handcuffed and moved to the new cell.  Once in the new cell, Plaintiff brought his hand to the food port to be uncuffed. After one cuff was removed, Plaintiff turned slightly so that the other cuff could be removed. Arnett and Gamboa then pepper sprayed Plaintiff, and unspecified correctional officers entered the cell and recuffed Plaintiff.

---

[4] These allegations contradict Plaintiff's prior complaint, in which he stated that, during this time, he attended Muslim religious services to eat. See Compl. ¶ 19, ECF No. 1 at 14.

Flores and Potzernitz escorted Plaintiff to the medical clinic. They placed pressure on his cuffs, causing pain to Plaintiff's wrist. Plaintiff leaned back to alleviate the pressure but was admonished by Potzernitz. Flores and Potzernitz then began pulling Plaintiff's arms. They lifted Plaintiff, who weighs over 260 pounds, into the air and slammed him on his right eye. They punched, kicked, choked, and stabbed him until he defecated on himself. Gamboa then sprayed Plaintiff again with pepper spray. CL Marsh watched the assault and laughed. Plaintiff claims that the assault was "pre-ordained" by Marsh and/or non-party Captain M.T. Cisneros.

Plaintiff was cuffed around the ankles and forced to walk soiled and barefoot to the clinic. Non-party LVN Ballesteros completed a wound check and Plaintiff was returned to his cell.

As a result of the multiple assaults, Plaintiff became suicidal and was taken to High Desert State Prison for a crisis bed. There, he was placed in a rubber room for two days. He was then returned to CSP and ultimately transferred to the California Substance Abuse Treatment Facility ("CSATF") on November 7, 2013.

Plaintiff was later found guilty on a Rules Violation Report of battery on a peace officer in relation to this incident, and the matter was referred to the District Attorney for criminal charges. The case is pending. Plaintiff claims that the delay in referring the charges to the District Attorney violated Due Process. Plaintiff also raises various claims regarding the state court's jurisdiction over his criminal case.[5]

### G.   Conspiracy Allegations

Plaintiff claims that the above-described acts were part of a conspiracy against him by "Green Wall gang members." In support of his allegation of conspiracy, he claims

---

[5] Plaintiff presents a variety of arguments concerning bonds, corporations, nationality, citizenship and the like. Plaintiff appears to be raising a "sovereign citizen" claim. "Courts across the country 'have uniformly rejected arguments' based on the sovereign citizen ideology as frivolous, irrational, or unintelligible. United States v. Staten, No. 1:10-cr-179, 2012 WL 2389871, at *3 (M.D. Pa. June 25, 2012) (collecting cases). The Ninth Circuit has rejected arguments premised on the ideology as 'utterly meritless.' See United States v. Studley, 783 F.2d 934, 937 n.3 (9th Cir. 1986)." Mackey v. Bureau of Prisons, No. 1:15-CV-1934-LJO-BAM, 2016 WL 3254037, at *1 (E.D. Cal. June 14, 2016).

that "Green Wall gang members" told other inmates that mass searches of their housing facility would cease if they "got rid of" Plaintiff. However, Plaintiff's safety was assured by the shot-callers on the yard.

### H.   Relief Sought

Plaintiff seeks $10,000,000 in compensatory damages, $1 in nominal damages, and $10,000,000 in punitive damages. He also seeks a declaration from the California Department of Corrections ("CDCR") that these Defendants did violate his rights. He seeks to be removed from state custody and placed into federal custody. He asks that his pending state criminal proceedings be removed to this Court. He asks that Defendants be arrested and that their public employment be terminated. He wants polygraph tests run on Defendants. He wishes to lodge his state court "counter-claim" in federal court.

## IV.   Analysis

### A.   Allegations Against Non-Parties

Plaintiff previously was advised that leave to amend was not granted for the purpose of allowing Plaintiff to present new, unrelated claims. See Fed. R. Civ. P. 20(a)(2). Nevertheless, Plaintiff's first amended complaint contains new allegations not previously discussed. These allegations run against individuals Plaintiff has not named as defendants. Rule 10(a) of the Federal Rules of Civil Procedure requires that each defendant be named in the caption of the complaint. A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, [and] for what relief. . . ." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).

The Court will not address the merits of new claims against individuals not named as defendants. This includes, but is not limited to, all claims against non-party CO Johnson; claims based on the July 2, 2013 and July 31, 2013 attacks; and claims arising prior to Plaintiff's incarceration at PVSP. These claims are directed at non-parties and do not appear to arise out of the same transaction or occurrence as the claims against

1  Defendants. These claims will be dismissed.

2  **B.  Allegations Against Private Individuals**

3  Plaintiff appears to raise allegations of deliberate indifference against an

4  unnamed ambulance driver and Dr. Edgar Clark. These individuals are not named as

5  defendants and it is unclear whether Plaintiff intends to proceed against them. As such,

6  the Court will not analyze the substance of these claims.

7  Additionally, Plaintiff is advised that prisoners may only bring § 1983 claims

8  against individuals acting "under color of state law." 42 U.S.C. § 1983. Private individuals

9  not employed by the prison or another state agency do not act under color of state law

10  unless they are so closely affiliated with the state that their conduct "may fairly be treated

11  as that of the state itself." Jensen v. Lane Cty., 222 F.3d 570, 575 (9th Cir. 2000) (citing

12  Jackson v. Metro. Edison Co., 418 U.S. 345, 350 (1974). In the prison medical care

13  context, such close affiliations exist where a private physician or hospital contracts with a

14  state prison to provide care to inmates. See West v. Atkins, 487 U.S. 42, 55-56 (1988);

15  George v. Sonoma Cnty. Sheriff's Dep't, 732 F.Supp.2d 922, 936 (N.D. Cal. 2010); see

16  also Jensen, 222 F.3d at 575 (relationship between county and private psychiatric group

17  providing mental evaluations was so "deeply intertwined" that psychiatrist who signed

18  commitment order acted under color of state law for § 1983 purposes).

19  Plaintiff has alleged no facts in this regard. To the extent he intends to proceed

20  against private individuals who are not employed by the prison, he must allege facts to

21  meet the legal standards set forth above.

22  **C.  Eighth Amendment Claims**

23  **1.  Deliberate Indifference to Medical Need**

24  The Eighth Amendment prohibits the imposition of cruel and unusual punishment

25  and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity,

26  and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the

27  Eighth Amendment when he acts with "deliberate indifference" to the serious medical

28

1   needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994).

2        "To establish an Eighth Amendment violation, a plaintiff must satisfy both an

3   objective standard—that the deprivation was serious enough to constitute cruel and

4   unusual punishment—and a subjective standard—deliberate indifference." Snow v.

5   McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To establish the objective prong, a plaintiff

6   must show a serious medical need by demonstrating that "failure to treat a prisoner's

7   condition could result in further significant injury or the unnecessary and wanton infliction

8   of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations

9   omitted).

10        To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful

11  act or failure to respond to a prisoner's pain or possible medical need and (b) harm

12  caused by the indifference." Jett, 439 F.3d at 1096. "Indifference may appear when

13  prison officials deny, delay, or intentionally interfere with medical treatment, or it may be

14  shown by the way in which prison physicians provide medical care." Id. (internal

15  quotations omitted). When a prisoner alleges that a delay of medical treatment amounts

16  deliberate indifference, the prisoner must show that the delay led to further injury. See

17  Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)

18  (holding that "mere delay of surgery, without more, is insufficient to state a claim of

19  deliberate medical indifference").

20        Plaintiff accuses Defendant Gamboa of delaying a response to Plaintiff's August

21  2, 2013 "man down" requests for 30 minutes. However, according to Plaintiff, Gamboa

22  responded to the requests and stated she did not see the blood Plaintiff claimed was on

23  his hands or head. Thus, it appears Gamboa was not aware that Plaintiff had a serious

24  medical need requiring treatment.  Furthermore, Plaintiff does not allege that this thirty

25  minute delay worsened his condition. Where a plaintiff alleges delay that constitutes

26  deliberate indifference, he must allege that the delay caused "significant harm and that

27  Defendants should have known this to be the case." Hallett v. Morgan, 296 F.3d 732,

28

744 (9th Cir. 2002).  Plaintiff has not done that here, and thus his claim against Gamboa based on her failure to respond immediately must be dismissed.

It appears that Plaintiff is also alleging deliberate indifference due to the Defendants' failure to provide him with a wheelchair. However, these claims appear to be based solely on an alleged CDCR policy requiring custody staff to provide inmates with interim use of a wheelchair upon request and until medical need can be determined. Such a policy does not set the bar for an Eighth Amendment constitutional claim. Plaintiff asserts no facts to indicate that he had a medical need for a wheelchair, that any Defendant was aware of that need, or that any Defendant's failure to provide the same was sufficiently egregious to amount to deliberate indifference. To the contrary, documents attached to Plaintiff's complaint reflect that medical staff consistently determined that Plaintiff had no medical need for a wheelchair. His repeated requests for such accommodation to medical staff were denied. His DPO status had been revoked prior to his arrival at PVSP. In light of such determinations, Defendants, all of whom are non-medical custody staff, cannot be said to be have been deliberately indifferent to Plaintiff's medical need.

## 2. Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not ... use excessive physical force against prisoners." Farmer, 511 U.S. at 832 (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

When determining whether the force was excessive, the court looks to the "extent of the injury suffered by an inmate . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by

the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" <u>Hudson</u>, 503 U.S. at 7 (citing <u>Whitley</u>, 475 U.S. at 321). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." <u>Hudson</u>, 503 U.S. at 9 (citing <u>Whitley</u>, 475 U.S. at 327).

The extent of injury suffered by the plaintiff may indicate the amount of force applied. <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" <u>Id.</u> (quoting <u>Hudson</u>, 503 U.S. at 9).

> The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."

<u>Wilkins</u>, 559 U.S. at 37-38 (internal citations and some internal quotation marks omitted).

Plaintiff here accuses Defendants Arnett and Potzernitz of attacking him in response to an emergency "man down" request while Plaintiff lay on the floor of his cell bloodied and in pain. Plaintiff also accuses Defendants Arnett, Gamboa, Flores, and Potzernitz of spraying him with pepper spray and brutally attacking him without provocation. These allegations are sufficient to state a claim.

Plaintiff also alleges that the mechanical restraints placed on him during an ambulance ride were too tight. "In general, in cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant." <u>Reviere v. Phillips</u>, 2014 WL 711002, at *6 (E.D. Cal. Feb. 21, 2014) (collecting cases). In order to

properly assert a claim for excessive force for tight handcuffs, Plaintiff must identify those individuals who were aware that the handcuffs were so tight that they were causing Plaintiff pain and then did nothing to alleviate that pain. See Shaw v. City of Rendondo Beach, 2005 WL 6117549, at *7 (C.D. Cal. 2005) ("In those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or other forms of abusive conduct in conjunction with the tight handcuffing.") Plaintiff states that he told two individuals that his handcuffs were causing pain – the ambulance driver, and an unnamed female correctional officer. However, as stated above, Plaintiff has stated no facts to suggest that the ambulance driver was acting under color of state law. Plaintiff allegations are cognizable only as to the female correctional officer, whom the Court will refer to as CO Jane Doe.

The use of Doe defendants generally is disfavored in federal court.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). The Court cannot order the Marshal to serve process on any Doe defendants until such defendants have been identified. See, e.g., Castaneda v. Foston, No. 1:12-cv-00026 WL 4816216, at *3 (E.D. Cal. Sept. 6, 2013). Plaintiff will be given the opportunity to identify CO Jane Doe through discovery prior to service. Id. (plaintiff must be afforded an opportunity to identify unknown defendants through discovery unless it is clear that discovery would not uncover their identities). If and when he is able to identify CO Jane Doe, he must move to amend his complaint to substitute this defendant's true name, so that service of process may be initiated upon her.

### 3.     Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 832-33 (1994) (quotations omitted). To establish a violation of this duty, the prisoner must show first, that he was incarcerated under

1    conditions posing a substantial risk of serious harm; and second, that a prison official

2    knew of and was deliberately indifferent to this risk. Id. at 834. Plaintiff here accuses CL

3    Marsh of watching the August 10, 2013 assault on Plaintiff, having the power to stop it,

4    and not doing anything to intervene. Plaintiff has thus asserted a viable claim against

5    this Defendant.

6        **D.    Due Process**

7        The Fourteenth Amendment prohibits states from "depriv[ing] any person of life,

8    liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Although

9    prisoners retain due process rights, those rights are limited "by the nature of the regime

10   to which they have been lawfully committed." Wolff v. McDonnell, 418 U.S. 539, 556

11   (1974) (citations omitted). To the extent Plaintiff asserts a due process claim against any

12   Defendant for falsifying disciplinary charges, he fails to state a claim. Buckley v. Gomez,

13   36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be

14   free from wrongfully issued disciplinary reports), aff'd without opinion, 168 F.3d 498 (9th

15   Cir. 1999); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (prisoner's claims

16   based on allegedly false charges do not state a constitutional claim); Brown v. CMC,

17   (C.D. Cal. May 18, 2010) ("allegations of a fabricated RVR, alone, do not support a

18   cognizable due process claim").

19       The Ninth Circuit has recognized "a clearly established constitutional due process

20   right not to be subjected to criminal charges on the basis of false evidence that was

21   deliberately fabricated by the government." Devereaux v. Abbey, 263 F.3d 1070, 1074-

22   75 (9th Cir. 2001); see also Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101,

23   1111-12 (9th Cir. 2010) (relying on Devereaux to hold that a state investigator "who

24   deliberately mischaracterizes witness statements in her investigative report also commits

25   a constitutional violation"). However, to the extent Plaintiff intends to pursue a claim in

26   relation to his state court criminal proceedings, such claims must be dismissed for the

27   reasons stated in detail below.

28

### E.   Conspiracy

Conspiracy under § 1983 merely provides a mechanism by which to plead or prove a constitutional or statutory violation.  Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980).  Although conspiracy claims are actionable under Section 1983, "it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Id. at 742.  A pro se complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights will not withstand a motion to dismiss. Zemsky v. City of New York, 821 F.2d 148, 152 (2nd Cir. 1987).

Plaintiff has not pled sufficient facts to support a cognizable claim for a conspiracy to violate Plaintiff's constitutional rights. Plaintiff's allegations that unidentified "Green Wall gang members" advised other prisoners that mass cell searches would stop if they "got rid" of Plaintiff is insufficient to support a claim that Defendants conspired to attack Plaintiff or deny him medical accommodations. This claim will therefore be dismissed.

### F.   Violation of CDCR Policies

Insofar as Plaintiff brings suit against any of the Defendants for violations of CDCR policy, he is advised that a violation of a prison regulation or policy is not a per se constitutional violation. See Davis v. Kissinger, 2009 WL 256574, *12 n.4 (E.D. Cal. 2009). Thus, complaints that prison officials violated prison policy will not support a Section 1983 claim.

### G.   The Americans with Disabilities Act

Title II of the Americans with Disabilities Act ("ADA") "prohibit[s] discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability."  Lovell, 303

F.3d at 1052. Title II of the ADA applies to inmates in state prisons. <u>Pennsylvania Dept.</u> <u>of Corrections v. Yeskey</u>, 524 U.S. 206 (1998); <u>see also</u> <u>Armstrong v. Wilson</u>, 124 F.3d 1019, 1023 (9th Cir. 1997); <u>see, Duffy v. Riveland</u>, 98 F.3d 447, 453–56 (9th Cir. 1996).

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." <u>Id.</u> at 1139. In the ADA context, a plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." <u>Id.</u> at 1140.

The "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as . . . medical care . . . constitutes exclusion from participation in or . . . denial of the benefits of the prison's services, programs, or activities." <u>United States v. Georgia</u>, 546 U.S. 151, 157 (2006).

Plaintiff's ADA claim fails. He has not identified his disability. He has also not asserted facts indicating he was excluded from or discriminated against with regard to services, program, or activities at CSP because of his disability. Though Plaintiff asserts that Defendants improperly denied him a wheelchair at various times, the Court again notes that non-defendant medical staff regularly and consistently rejected Plaintiff's requests for a wheelchair and claims of disability. Plaintiff has not shown that Defendants denied him reasonable and necessary accommodations with deliberate indifference. Therefore, this claim will be dismissed.

**H.    State Criminal Proceedings**

To the extent that Plaintiff seeks intervention in ongoing state criminal proceedings, this Court must abstain. Under principles of comity and federalism, a

1    federal court should not interfere with ongoing state criminal proceedings except under

2    special circumstances. Younger v. Harris, 401 U.S. 37 (1971); Samuels v. Mackell, 401

3    U.S. 66 (1971). Abstention is proper regardless of whether the applicant seeks

4    declaratory relief, injunctive relief, or damages. See Mann v. Jett, 781 F.2d 1448, 1449

5    (9th Cir. 1986) ("When a state criminal prosecution has begun, the Younger rule directly

6    bars a declaratory judgment action" as well as a section 1983 action for declaratory relief

7    and damages "where such an action would have a substantially disruptive effect upon

8    ongoing state criminal proceedings."); Gilbertson v. Albright, 381 F.3d 965, 984 (9th Cir.

9    2004) (Younger abstention applies to actions for damages as it does to declaratory and

10   injunctive relief). Younger abstention is required when: (1) state judicial proceedings are

11   pending; (2) the state proceedings involve important state interests; and (3) the state

12   proceedings afford adequate opportunity to raise the constitutional issue. Middlesex

13   Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Dubinka v.

14   Judges of the Super. Ct., 23 F.3d 218, 223 (9th Cir. 1994). Nothing before the Court

15   suggests that abstention is unwarranted here.

16          To the extent Plaintiff's state criminal proceedings may have concluded, Plaintiff

17   should note that state prisoners cannot challenge the fact or duration of their

18   confinement in a § 1983 action. Their sole remedy lies in habeas corpus relief. Wilkinson

19   v. Dotson, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or

20   the Heck bar, this exception to § 1983's otherwise broad scope applies whenever state

21   prisoners "seek to invalidate the duration of their confinement—either directly through an

22   injunction compelling speedier release or indirectly through a judicial determination that

23   necessarily implies the unlawfulness of the State's custody." Id.   at 81. "[A] state

24   prisoner's § 1983 action is barred (absent prior invalidation) if success in that action

25   would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-82;

26   Heck v. Humphrey, 512 U.S. 477, 489 (1994) (until and unless favorable termination of

27   the conviction or sentence occurs, no cause of action under § 1983 exists).

28

Based on the foregoing, the Court will dismiss all claims relating to Plaintiff's state court proceedings, including Plaintiff's requests that such proceedings be removed to this Court and that his state court "counter-claim" be "lodged" in federal court.

## I.      Armstrong Remedial Plan

Plaintiff raises various allegations regarding Defendants failure to issue or abide by modification orders apparently required under the Armstrong remedial plan. Plaintiff may not pursue any claims in this action based on an alleged violation of the Armstrong remedial plan. A violation of a court order in Armstrong does not provide Plaintiff with an independent claim for relief in this action. See Cagle v. Sutherland, 334 F.3d 980, 986-87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). To the extent that plaintiff wishes to seek assistance that he believes is due pursuant to the Armstrong plan, plaintiff "must pursue his request via the consent decree or through class counsel." Crayton v. Terhune, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002). Plaintiff may not sue for damages in this action solely on the basis that defendants allegedly violated the remedial plan.

## J.      Injunctive Relief

In addition to his requests regarding his state court proceedings, discussed above, Plaintiff seeks the following equitable relief: to be removed from state custody and placed into federal custody, that Defendants be arrested and their public employment terminated, and that polygraph tests be run on Defendants.

The federal government is not named as a defendant in this action and the Court has no authority to order the federal government to assume custody of Plaintiff. Zepeda v. United States Immigration & Naturalization Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties

and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

Plaintiff's requests that Defendants be arrested and terminated from their employment are not proper requests in this action. See 18 U.S.C. § 3626(a)(1)(A).

Plaintiff's request that Defendants be required to take polygraphs also is not a proper subject of relief. If and when Defendants are served and appear in this action, Plaintiff may request information from them through discovery pursuant to the Federal Rules of Civil Procedure.

Accordingly, Plaintiff has failed to state any cognizable claims for injunctive relief.

### K.   Eleventh Amendment Immunity

As Plaintiff already has been advised, his official capacity claims for damages against the Defendants are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169-70 (1985) (Eleventh Amendment immunity from damages in federal court action against state remains in effect when state officials are sued for damages in their official capacity). Plaintiff's damages request against Defendants in their official capacities will be dismissed.

Although Eleventh Amendment immunity precludes an award of damages against Defendants in their official capacities, it "does not bar actions for declaratory or injunctive relief brought against state officials in their official capacity." Austin v. State Indus. Ins. Sys., 939 F.2d 676, 680 (9th Cir. 1991). As stated above, Plaintiff's requests for injunctive relief are not cognizable in this action. Plaintiff's requests for declaratory relief against the Defendants remains intact, as does Plaintiff's request for damages against the Defendants in their individual capacities. See Hafer v. Melo, 502 U.S. 25, 31 (1991) (Eleventh Amendment does not bar suits seeking to impose individual liability upon a government official for actions taken under color of state law).

### V.   Conclusion and Order

Based on the foregoing, the Court finds that Plaintiff states the following claims

1  against the following Defendants: (1) an Eighth Amendment excessive force claim

2  against Defendants Arnett, Gamboa, Potzernitz, Flores, and Jane Doe; and (2) an

3  Eighth Amendment failure to protect claim against Defendant CL Marsh. All other claims

4  and Defendants are subject to dismissal for the reasons stated supra.

5      The Court will grant Plaintiff an opportunity to file an amended complaint

6  consistent with the foregoing. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If

7  Plaintiff does not wish to file a second amended complaint, and he is agreeable to

8  proceeding only on the claims found to be cognizable, he may file a notice informing the

9  Court that he does not intend to amend, and he is willing to proceed only on his

10 cognizable claims. The other Defendants then will be dismissed, and the Court will

11 provide Plaintiff with the requisite forms to complete and return so that service of process

12 may be initiated.

13     If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a

14 deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth

15 "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678

16 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each named

17 Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297

18 F.3d 930, 934 (9th Cir. 2002).

19     Plaintiff again is advised that, although he has been given the opportunity to

20 amend, **it is not for the purposes of adding new claims.** George, 507 F.3d at 607.

21 Plaintiff should carefully read this Screening Order and focus his efforts on curing the

22 deficiencies set forth above.

23     Finally, Plaintiff is advised that Local Rule 220 requires that an amended

24 complaint be complete in itself without reference to any prior pleading. As a general rule,

25 an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d

26 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no

27 longer serves any function in the case. Therefore, in an amended complaint, as in an

28

original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Within thirty (30) days from the service of this order, Plaintiff must either:

   a. File a second amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file a second amended complaint and that he is willing to proceed only on the claims found to be cognizable in this order;

2. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his first amended complaint, filed December 10, 2015;

3. If Plaintiff fails to file a second amended complaint or notify the Court in writing that he wishes to proceed only on his cognizable claims, in compliance with this order, the Court will dismiss this action, with prejudice, for failure to comply with a court order and failure to prosecute.

IT IS SO ORDERED.

Dated:   July 29, 2016                    /s/ Michael J. Seng

                                          UNITED STATES MAGISTRATE JUDGE